**In re RADFORD (LOUISVILLE JOINT STOCK LAND BANK, Intervener).**

District Court, W. D. Kentucky.
Nov. 14, 1934.

David A. Sachs, Jr., of Louisville, Ky., Frank Rives, of Hopkinsville, Ky., and Edwin A. Krauthoff, of Chicago, Ill., for debtor.

John E. Tarrant, of Louisville, Ky., for Louisville Joint Stock Land Bank.

William Lemke, of Fargo, N. D., amicus curiæ.

DAWSON, District Judge.

After an unsuccessful effort to secure a composition or extension of his debts under section 75 of the Bankruptcy Act, as added by the Act of March 3, 1933 (section 203, title 11, USCA), the debtor filed an amended petition, as authorized by the Frazier-Lemke Act (Act of June 28, 1934, 11 USCA § 203(s), claiming the benefits of that act. For convenience, the act is set out in full in the margin.[1] At the time this amendment was filed, the debtor was the owner of a 170-acre farm in Christian county, Ky., on which there were two mortgages, aggregating the principal sum of $9,000, in favor of the Louisville Joint Stock Land Bank. In 1933 foreclosure pro-

---

[1] (s) Any farmer failing to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition or extension proposal, or if he feels aggrieved by the composition or extension, may amend his petition or answer asking to be adjudged a bankrupt. Such farmer may, at the time of the first hearing, petition the court that all of his property, whether pledged, encumbered, or unencumbered, by liens or otherwise, be appraised, and that his exemptions as prescribed by the State law, subject to any liens thereon, be set aside and that he be allowed to retain possession of any part or parcel or all of the remainder of his property and pay for same under the terms and conditions set forth in this subsection (s).

(1) Upon such a request being made in the petition or answer, at the time of the first hearing, appraisers shall be designated and appointed. Such appraisers shall appraise all the property of the debtor at its then fair and reasonable value, not necessarily the market value at the time of such appraisal. The appraisals shall be made in all other respects, with right of objections, exceptions, and appeal, in accordance with this Act: Provided, That in case of real estate either party may file objections, exceptions, and appeals within one year from date of order approving the appraisal.

(2) After the value of the debtor's property shall have been fixed by the appraisal as herein provided, the referee shall issue an order setting aside to such debtor his exemptions as prescribed by the State law, subject to any existing mortgages or liens upon any such exemptions to an amount equal to the value, as fixed by the appraisal, of the value of such exempt property as is covered by any mortgage or lien, and shall further order that the possession, under the control of the court, of any part or parcel or all of the remainder of the debtor's property, shall remain in the debtor subject to a general lien, as security for the payment of the value thereof to the trustee of the creditors, if a trustee is ap-

pointed, such a lien to be subject to and inferior to all prior liens, pledges, or encumbrances. Such prior liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such prior liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors holding such prior liens, pledges, or encumbrances up to the actual value of such property as fixed by the appraisal provided for herein. All liens herein on livestock shall cover all increase, and all liens on real property shall cover all rental received or crops grown thereon by the debtor, as security for the payment of any sum that may be due or past due under the terms and provisions of the next paragraph, until the full value of any such particular property has been paid.

(3) Upon request of the debtor, and with the consent of the lien holder or lien holders, the trustee, after the order is made setting aside to the debtor his exemptions, shall agree to sell to the debtor any part, parcel, or all of the remainder of the bankrupt estate at the appraised value upon the following terms and conditions, and upon such other conditions as in the judgment of the trustee shall be fair and equitable:

a. Payment of 1 per centum interest upon the appraised price within one year from the date of said agreement.

b. Payment of 2½ per centum of the appraised price within two years from the date of said agreement.

c. Payment of an additional 2½ per centum of the appraised price within three years from the date of said agreement.

d. Payment of an additional 5 per centum of the appraised price within four years from the date of said agreement.

e. Payment of an additional 5 per centum of the appraised price within five years from the date of said agreement.

f. Payment of the remaining unpaid balance of the appraised price within six years from the date of said agreement.

Interest shall be paid on the appraised price and unpaid balances of the apprais-

ceedings were instituted by the bank in the state court; the debtor having defaulted on several installments of principal and interest and also on his obligation to pay the taxes and to keep the mortgaged property insured, and on June 30, 1934, a decree of foreclosure was entered and the property ordered sold. The amended petition herein was filed after the entry of the decree of foreclosure, but before a sale thereunder.

The Louisville Joint Stock Land Bank intervened in this proceeding by answer, challenging the constitutionality of the Frazier-Lemke Act, and this is the sole issue for decision. The bank insists: (1) That the Frazier-Lemke Act does not deal with the subject of bankruptcies, or with any subject over which Congress is given legislative power by the Constitution; (2) that the act deprives creditors of their property without due process of law, in violation of the Fifth Amendment to the Constitution of the United States; (3) that, as applied to this proceeding, the act denies full faith and credit to a judgment of a Kentucky court of competent jurisdiction, in violation of section 1 of article 4 of the Constitution.

The power of Congress to enact this legislation, if such power exists, can only be found in that provision of clause 4, section 8, article 1, of the Constitution, which empowers Congress "to establish uniform laws on the subject of bankruptcies throughout the United States." If the act, when read in connection with the National Bankruptcy Act of 1898, as from time to time amended (11 US CA), and of which it is a part, is not one on the subject of bankruptcies within the meaning of the Constitution, then it cannot be sustained.

ed price yearly as it accrues at the rate of 1 per centum per annum and all taxes shall be paid by the debtor.

The proceeds of such payments on the appraised price and interest shall be paid to the lien holders as their interests may appear, and to the trustee of the unsecured creditors, as their interests may appear, if a trustee is appointed.

(4) An agreement having been reached as provided in subsection (3), the debtor may consume or dispose of any part or parcel or all of said property whether covered by the general lien to the trustee, if a trustee is appointed, or subject to pledges or prior liens or encumbrances held by secured creditors, provided he pays the appraised value of such part or parcel or all, as the case may be, to the secured creditors, as their interests may appear, and the trustee of the unsecured creditors, as his interests may appear, if a trustee is appointed, or he may put up a bond approved by the referee in bankruptcy that he will make payments, as provided for herein, of any property so consumed or disposed of.

(5) In case the debtor fails to make any payments, as herein provided, to any or all of the secured creditors or to the trustee of the unsecured creditors, then such secured creditors or the trustee may proceed to enforce their pledge, lien, or encumbrances in accordance with law. It shall be the duty of the secured creditors and of the trustee of the unsecured creditors to discharge all liens of record in accordance with law, whenever the debtor has paid the appraised value of any part, parcel, or all of his property as herein provided.

(6) Having complied with the provisions of subsection (3), the debtor may apply for his discharge as provided in this Act.

(7) If any secured creditor of the debtor, affected thereby, shall file written objections to the manner of payments and distribution of debtor's property as herein provided for, then the court, after having set aside the debtor's exemptions as prescribed by the State law, shall stay all proceedings for a period of five years, during which five years the debtor shall retain possession of all or any part of his property, under the control of the court, provided he pays a reasonable rental annually for that part of the property of which he retains possession; the first payment of such rental to be made within six months of the date of the order staying proceedings, such rental to be distributed among the secured and unsecured creditors, as their interests may appear, under the provisions of this Act. At the end of five years, or prior thereto, the debtor may pay into court the appraised price of the property of which he retains possession: Provided, That upon request of any lien holder on real estate the court shall cause a reappraisal of such real estate and the debtor may then pay the reappraised price, if acceptable to the lien holder, into the court, otherwise the original appraisal price shall be paid into court and thereupon the court shall, by an order, turn over full possession and title of said property to the debtor and he may apply for his discharge as provided for by this Act: Provided, however, That the provisions of this Act shall apply only to debts existing at the time this Act becomes effective.

If the debtor fails to comply with the provisions of this subsection the court may order the trustee to sell the property as provided in this Act.

■ Undoubtedly, the Constitution vests in Congress the power to pass laws which are territorially uniform, dealing with the relation of creditor and debtor, when the debtor is unable or unwilling to discharge his indebtedness in full. Whatever once may have been the doubt of courts and lawwriters as to the scope of the phrase "laws on the subject of bankruptcies," as used in the Constitution, it is now settled that this power of Congress is not limited nor circumscribed by the English bankruptcy acts in force at the time of the adoption of the Constitution. Probably the best definition which has ever been given of its scope is found in the discussion of the subject by Mr. Justice Catron in the case of In re Klein, decided in the Circuit Court for the District of Missouri, Fed. Cas. No. 7865, and also reported in a note to Nelson v. Carland, 1 How. 265, at pages 277, 281, 11 L. Ed. 126. He said: "It extends to all cases where the law causes to be distributed, the property of the debtor among his creditors: this is its least limit. Its greatest, is a discharge of the debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress."

■ This language was quoted with approval in the case of Hanover National Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113, in which the court held that the permissible scope of bankruptcy laws under the Federal Constitution is much broader than had been the scope of the English laws on the subject prior to the adoption of the Constitution. That case holds that the subject of bankruptcies under the Constitution includes, not only the power to provide for a distribution of the property of the debtor among his creditors, but also the power to provide for a discharge of the debtor from his debts and legal liabilities, and that therefore the power conferred upon Congress by this provision of the Constitution involves the power to impair the obligation of contracts. It also holds that Congress possesses the power to make bankruptcy laws available to debtors as well as to creditors. Therefore the bankruptcy provision of the Constitution cannot be regarded as a power conferred upon Congress to be exercised solely for the benefit of creditors. Subject to the requirement of uniformity, it is a grant of plenary power over the subject of bankruptcies, and while, of course, Congress, under the pretext of executing this power, cannot pass laws dealing with matters not intrusted to the national government, Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, Child Labor Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432, yet, so long as the legislation is fairly within the constitutional grant, the public policy exemplified therein is exclusively within congressional discretion. Consideration may be given to the rights both of creditors and of distressed debtors, provided only that the consideration extended to either class is not so unjust or arbitrary as to violate fundamental principles of justice or to smack of collusion between the law-making body and the favored class.

■ A fundamental essential of all bankruptcy laws under the Constitution is the reasonably prompt distribution among his creditors of the value of the property of the debtor unable or unwilling to pay his debts; but I cannot believe that this necessarily requires a sale of the bankrupt's property under competitive bidding. If the law provides for a realization of the fair value of the debtor's property by some other method than by such a sale, and for a distribution among the creditors according to their rights of the sum thus ascertained, the same general purpose is accomplished as would be accomplished by a sale, and therefore it seems to me entirely within the competency of Congress to provide for a determination of the value of the debtor's property subject to distribution by some other method than by a sale under competitive bidding. Hence there is no constitutional impediment against Congress providing that in a bankruptcy proceeding the actual fair value of the debtor's property subject to distribution shall be ascertained by appraisers appointed by the court, such appraisal to be made under the supervision and subject to the control of the court; nor to prevent Congress from designating the order of priority in which interested parties may be permitted to elect to pay the appraisal price and take the property. Furthermore, there can be no doubt that Congress can validly provide for the payment of this appraisal value within such a reasonable time, or in such installments over such a reasonable time, as it may determine; and it is entirely within the power of Congress to provide that the deferred payments shall not bear interest. Again, there can be no doubt of the power of Congress to require all of the bankrupt's property, including that covered by mortgages or other incumbrances, to be administered in the bankruptcy court, free from the interference of state tribunals; otherwise, the Constitu-

tion of the United States and the laws passed in pursuance thereof would not be the supreme law of the land, as they are declared to be in clause 2 of article 6 of the Constitution.

Measured by these principles, it seems to me that the act in question deals only with matters within the competency of Congress under the bankruptcy provision of the Constitution. It provides for adjudicating the debtor a bankrupt, and subjects all of his property to the control of the bankruptcy court. It provides for the distribution among his creditors, according to their respective rights, of the value of all of the debtor's property which is subject to his debts. It provides that this value shall be determined by an appraisal, but it is careful to set up ample safeguards against either overappraisal or underappraisal of the property. The appraisers are not bound by the market price at the time of the appraisal, but under the act are free to take into consideration all relevant factors in determining the true value of the property. The right of objections, exceptions, and appeal is made available to interested parties. I do not agree with the contention of the bank that the right of court review is granted only as to appraisals of real estate. The act, in part, provides: "The appraisals shall be made in all other respects, with right of objections, exceptions, and appeal, in accordance with this Act: Provided, That in case of real estate either party may file objections, exceptions, and appeals within one year from date of order approving the appraisal." 11 USCA § 203 (s) (1).

If the only right of court review of appraisals is of appraisals of real estate, then that part of the quoted language preceding the word "provided" is entirely meaningless. The meaning of the quoted language becomes perfectly apparent, however, when we keep in mind the fact that the Frazier-Lemke Act is, as its title declares, "An Act To amend an Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States,' approved July 1, 1898, and Acts amendatory thereof and supplementary thereto." The amendment is, of course, an integral part of the Bankruptcy Act of July 1, 1898, as from time to time amended, and the "right of objections, exceptions, and appeal, in accordance with this Act," preserved to interested parties, necessarily means such rights as are found in the Bankruptcy Act in its entirety, and that act as a whole makes ample provision for such court review. No other meaning can possibly be given to the language used, because the Frazier-Lemke Act itself contains no further reference to the right of objections, exceptions, and appeal. The language referred to was intended by Congress to have some meaning. Therefore, reading the quoted language with the thought of giving effect to all the words, it seems perfectly plain to me that interested parties may file with the referee objections to the appraisal of any character of property of the debtor, and, if dissatisfied with the ruling of the referee, may file a petition for review by the District Judge, and, if dissatisfied with his action, have same reviewed by the appellate court, to the extent that the general bankruptcy act authorizes such review. All of these proceedings questioning the appraisal, according to the plain language of the act, must be had in the manner prescribed in the general bankruptcy act, and as to all property other than real estate, within the time prescribed by the provisions of that act. As to real estate, the objections, exceptions, and appeal may be taken at any time within one year from the date of the order of the referee approving the appraisal. My conclusion that the words "this Act," found in the quoted language, refer to the bankruptcy act in its entirety is re-enforced by the language of subsection 6 (11 USCA § 203 (s) (6), which provides: "Having complied with the provisions of subsection (3), the debtor may apply for his discharge as provided in this Act"; and by that part of subsection 7 (11 USCA § 203 (s) (7) which provides that, after the debtor has complied with its provisions, "he may apply for his discharge as provided for by this Act"; and by the language of the last sentence of subsection 7 (11 USCA § 203 (s) (7) which reads: "If the debtor fails to comply with the provisions of this subsection the court may order the trustee to sell the property as provided in this Act." As the Frazier-Lemke Act sets out no method by which the debtor may apply for his discharge, nor for the sale of the debtor's property, the language just quoted would have no meaning whatever unless the words "this Act," therein used, refer to the bankruptcy act in its entirety, of which the Frazier-Lemke Act is a part. Hence, the words "this Act," found in subsections 6 and 7 above referred to and in the provision dealing with appraisals, necessarily refer to the bankruptcy act as a whole. Thus construed, I have no doubt that the method of determining the value of the property of the debtor subject to distribution among his creditors is one fairly calculated to secure for the creditors the full and fair value thereof.

The act gives to the debtor the sole right to become the purchaser of any part of the property from the trustee at the appraised value thereof, and to pay for same in installments extending over a period of six years, with interest at one per cent.; but this right is predicated upon the consent of the lienholders. The fact that the consent of the general creditors and of the trustee is not required can not be taken advantage of by the bank in this case, as it is not a general creditor except as to the excess of its debt over the appraisal value of the property in lien to it; but in my judgment this provision of the act would be valid even though the consent of no class of creditors were required, provided the terms of the payment of the appraisal value fixed in subsection 3 of the act (11 USCA § 203 (s) (3) are not so unreasonable as against creditors as to violate one of the fundamental essentials of bankruptcy acts, viz., the distribution to creditors, within a reasonable time, of the value of the property of the bankrupt subject to distribution; but this question will be discussed later in the opinion in connection with my discussion of subsection 7. As heretofore indicated, appraisal of the property of the debtor under the safeguards contained in the act is fairly calculated to secure for creditors a full and fair value of the property. If this is done, no creditor has the right to complain because the debtor is given the sole right to become the purchaser at this price. In bankruptcy proceedings, the holder of a lien on property certainly has no constitutional right to demand that he be allowed to become the purchaser of the property covered by his lien. If he is allowed to realize on this property the full value thereof for application to his lien debt, no right of his has been violated. Indeed, I know of no constitutional inhibition against state laws providing that in foreclosure proceedings under state law the value of incumbered property shall be determined by an appraisal under proper safeguards to protect the interest of the lienholder, and giving the debtor the prior right to become the purchaser of the incumbered property at the appraisal price.

Counsel for the bank advance the suggestion that those provisions of the act, permitting the debtor to become the purchaser of his property at its appraisal value under the terms therein stated, are, in effect, a composition with his creditors, and therefore do not relate to the subject of bankruptcies within the constitutional sense. I do not think this contention is sound. In the first place, those provisions of the act are not the equivalent of a composition, because a composition settlement with creditors may or may not result in the distribution of the entire value of the debtor's property to his creditors. His creditors may agree to a composition settlement which will result in the payment of less money than the full value of his property; and, if approved by the court, under the present bankruptcy law, the bankrupt is entitled to be repossessed of his property and discharged of his debts, provided he has made a full disclosure of his property and has been guilty of no fraud in connection with the composition settlement. The provisions of the act referred to, however, when fairly construed, require the debtor, if he takes over the property under its terms, to pay the full fair value of same as determined by an appraisal under the terms of the act. Even should those provisions of the act, however, be construed as the equivalent of a composition settlement, such a construction would not make the act unconstitutional. Provision for a composition settlement by a bankrupt with his creditors and for revesting him with title to his property and for his discharge upon approval and execution of such settlement was contained in the Bankruptcy Act of 1874 (18 Stat. 182), and this provision was held by Circuit Justice Hunt to be a valid exercise of the power of Congress under the bankruptcy clause of the Constitution in the case of In re Reiman, Fed. Cas. No. 11,675. Again, in the case of Wilmot v. Mudge, 103 U. S. 217, at page 219, 26 L. Ed. 536, it was held that a proceeding under the composition provision of the Bankruptcy Act of 1874 was a proceeding in bankruptcy under that Bankruptcy Act, and the clear import of that decision is that Congress has the power under the bankruptcy provision of the Constitution to provide for composition settlements in bankruptcy proceedings and for the discharge of the bankrupt after such composition settlement has been approved and complied with. The present Bankruptcy Act (section 12, 11 USCA § 30) contains a composition provision, and, while I know of no case directly upholding its constitutionality, I think such is the necessary deduction to be drawn from the cases of Cumberland Glass Manufacturing Co. v. DeWitt & Co., 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042; Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U. S. 269, 44 S. Ct. 506, 68 L. Ed. 1013, and Myers v. International Trust Co., 273 U. S. 380, 47 S. Ct. 372, 71 L. Ed. 692. It is true each of these cases

points out that a composition settlement in a certain sense is a substitute for bankruptcy proceedings, as such proceedings are required to be conducted under the Act of 1898; but they each recognize, inferentially at least, the propriety of the inclusion in a bankruptcy statute of a provision for the composition of debts and for a discharge and restoration of the title and possession of the debtor when such composition has been approved and effected. Composition settlements, as authorized by the present Bankruptcy Act (11 USCA § 30), can be sustained on the idea that the sum paid under such a settlement fairly approximates the value of the debtor's property. Before the creditors are called upon to act upon the debtor's proposition of composition, he must submit himself to an examination in open court or at a meeting of his creditors, and file a full schedule of his property and of his liabilities. It cannot be presumed that, with this means of informing themselves, the creditors, or a majority of them, would consent to a settlement which would result in securing for themselves a substantially less sum than the fair value of the debtor's property. Such a composition settlement, therefore, substantially accomplishes what is required in all bankruptcy statutes, viz., a distribution of the value of the bankrupt's property among his creditors.

■ It is contended by counsel for the bank that the act requires a reduction of the claims of creditors, whether they consent to such reduction or not. Such a conclusion can only result from a superficial consideration of the act. As I read it, the act nowhere requires any such scaling down of debts. It devotes the fair value of the entire property of the debtor, other than his exemptions, to the payment of the claims of his creditors. As to secured claims, if the appraisal value of the pledged property is less than the amount of the secured debt, the deficiency, including interest, can be proven as a general claim and participate in the distribution of the appraisal value of the unincumbered property ratably with the other unsecured claims. Of course, when the value of the bankrupt's estate is not sufficient to pay his debts in full, the practical effect of a discharge is to reduce the claims of creditors, but such is the effect of a discharge under any bankruptcy law.

■ Those provisions of the act found in subsections 3, 4, 5, and 6 (11 USCA § 203 (s) (3–6) which I have been discussing, of course, are never called into play except upon request of the debtor, and then only with the consent of the lienholder. If the debtor does not request the privilege of purchasing the property at its appraised value, then I think it clear from the entire act that the property must be administered under the provisions of the Bankruptcy Act applicable in ordinary bankruptcy proceedings.

Having made his request to purchase, however, and met with refusal or objection by secured creditors, subsection 7 of the act (11 USCA § 203 (s) (7) provides that the court, after setting aside the debtor's exemptions as prescribed by state law, " * * * shall stay all proceedings for a period of five years, during which five years the debtor shall retain possession of all or any part of his property, under the control of the court, provided he pays a reasonable rental annually for that part of the property of which he retains possession; the first payment of such rental to be made within six months of the date of the order staying proceedings, such rental to be distributed among the secured and unsecured creditors, as their interests may appear, under the provisions of this Act. At the end of five years, or prior thereto, the debtor may pay into court the appraised price of the property of which he retains possession: Provided, That upon request of any lien holder on real estate the court shall cause a reappraisal of such real estate and the debtor may then pay the reappraised price, if acceptable to the lien holder, into the court, otherwise the original appraisal price shall be paid into court and thereupon the court shall, by an order, turn over full possession and title of said property to the debtor and he may apply for his discharge as provided for by this Act: Provided, however, That the provisions of this Act shall apply only to debts existing at the time this Act becomes effective.

"If the debtor fails to comply with the provisions of this subsection the court may order the trustee to sell the property as provided in this Act."

■ This subsection postpones the right of sale of the debtor's property for five years, with the privilege to the debtor during that time to occupy and use same, provided he pays a reasonable rental therefor, and to become the purchaser thereof at any time during that period, as therein provided. Certainly Congress has the power to prohibit the sale of the assets of a bankrupt for a reasonable length of time after the court takes possession of same, and to authorize the trustee or other representative of the creditors, or officer of the court, to rent same during the waiting period. If it possesses this power,

why may not Congress authorize the property to be rented to the debtor? Possessing the power to delay the sale of a bankrupt's assets, and to authorize the rental thereof in the meanwhile to the debtor, why may not Congress also provide that at the end of the waiting period, or prior thereto, the debtor may become the purchaser of the property by paying in cash the appraisal value thereof? Frankly, I can see no constitutional impediment to such legislation on the part of Congress, if that body deems it in the furtherance of sound public policy.

The act is careful to make provision to protect the creditors, in event real estate increases in value after the appraisal made under subsection 1 (11 USCA § 203 (s) (1) and before the debtor exercises his option to purchase under subsection 7. It provides that, at the request of any lienholder on real estate, the court shall cause a reappraisal of such real estate, and the debtor, if he desires to take over the property, must pay the reappraisal price, if acceptable to the objecting lienholder, or otherwise he must pay the original appraisal price. Of course, this simply means that, if he desires to avail himself of the right to purchase the property under subsection 7, the debtor must pay the original appraisal price or the reappraisal price, whichever is the greater.

■■■■■■ I think the bank is in error in its contention that no provision is made for the reappraisal of unincumbered real estate. The reappraisal provision must be read in the light of that provision found in subsection 2 (11 USCA § 203 (s) (2) which declares that the property of which the debtor retains possession, under the control of the court, shall be subject to a general lien as security for the payment of the value thereof to the trustee of the creditors, if a trustee is appointed, such lien to be subject to and inferior to all prior liens, pledges, or incumbrances. Thus, when the debtor takes possession of his property under subsection 2, the law not only continues in force the liens then against same, but also places it in lien to the trustee for the benefit of all creditors. Therefore the trustee is undoubtedly a lienholder within the meaning of the reappraisal provision of subsection 7. He is such a lienholder, not only on incumbered real estate of the debtor, but on the unincumbered real estate as well, and, being such a lienholder, he is granted the right to demand a reappraisal of the real estate of the debtor before the debtor can become a purchaser thereof under subsection 7. It is true the act makes no pro-

vision for the reappraisal of personal property, but I cannot see that this fact affects the validity of the act. Indeed, I do not think the validity of the act would be affected had it made no provision for the reappraisal of any of the property. I do not doubt the power of Congress to provide that one appraisal made at the beginning of the proceedings by impartial appraisers, free to give consideration to all relevant factors of value, with right of judicial review, shall be binding upon all interested parties.

■■■■ I am not impressed with the contention of the bank that the waiting period of five years, provided for in subsection 7, cancels all interest on its mortgage which would otherwise accrue during that period. Such is not the necessary effect of the act, although it may be its incidental effect. It cancels no interest; the debt continues to draw interest. As a matter of fact, if at the date of the original appraisal the value of the property in lien is not sufficient to pay the principal debt and interest, but during the waiting period so increases in value that on a reappraisal it will satisfy the principal and interest, the lien creditor has been the gainer. On the other hand, of course, if the property has not increased in value, the creditor has lost interest on the principal sum during the waiting period. Such might easily be the effect, however, of any law which permits property sold under foreclosure to be sold on time without interest on deferred payments. The act provides that during the waiting period the debtor may occupy and use the property only upon condition that he pays a reasonable annual rental, which shall be distributed to the creditors according to their rights in the property. Under this provision, the court is not required to fix the annual rental at one time, and in advance, for the entire five-year period, but the rental may be adjusted annually. Furthermore, inasmuch as the debtor holds the property subject to the control of the court, I have no doubt that the court is authorized under the act to require, not only such security for the payment of the rent, but for the upkeep and protection of the property, as in its judgment may be deemed to the interest of creditors and fair to the debtor. Even if it be conceded that Congress cannot validly provide for a waiting period without making provision for the probable loss of interest to the creditors during such waiting period, it seems to me that Congress might reasonably assume that on the whole the provision for the payment of rental, coupled with the power of the court to prevent waste and

to require upkeep, would compensate for the loss of interest. Certainly there is no proof that such would not be the result in this case.

It is true that at the end of the waiting period of five years the debtor may decide not to take the property, in which event the trustee is required under the act to sell it in accordance with the provisions of the general bankruptcy act; but I cannot see that this provision renders the act invalid. We have already seen that Congress may properly provide for a reasonable waiting period before the sale of property in bankruptcy proceedings, and authorize its rental during such period. If the debtor decides not to take the property at the end of the waiting period, then the result of the proceedings under subsection 7 in such a case is substantially the same as if the act had simply prohibited the sale of the property for five years from the date of adjudication and authorized the rental of it during that period of time.

Is the waiting period of five years such an unreasonable delay in the distribution of the property of the bankrupt to his creditors as to amount to a denial of due process? It seems to me that this resolves itself into the question of whether such a period of delay substantially denies to the creditors the right of a distribution of the bankrupt's assets. It must be accepted that it was the judgment of Congress that it does not, and this judgment must be weighed in the light of the conditions confronting Congress when the law was enacted. Courts may take judicial notice of universally recognized facts. At the time this legislation was enacted, the nation was going through the severest financial depression in its entire history. Values of all property, and particularly of farm property, had not only sunk to unprecedented levels, but there was no market for it even at these levels. In legislating on matters committed to it by the Constitution, Congress undoubtedly may give thought to public policy and the general welfare. Within the scope of its delegated powers it may legislate for the general welfare, just as states may do under their police power. The Lottery Case, 188 U. S. 321, 23 S. Ct. 321, 47 L. Ed. 492; Hipolite Egg Co. v. United States, 220 U. S. 45, 31 S. Ct. 364, 55 L. Ed. 364; Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168. Unquestionably, it is desirable that the sacrifice of farm property and the dispossession of farmers shall be avoided, so far as constitutionally may be done with fairness to others, during an emergency such as now prevails. It was the judgment of Congress that through the medium of bankruptcy proceedings the farmer should be given five years within which to rehabilitate himself and save his property. Discretion on this subject, within constitutional bounds, rests with Congress, and I am not prepared to say that these bounds have been exceeded in the legislation under consideration.

It seems to me that the claim of the bank that the act violates section 1 of article 4 of the Constitution, in that it denies full faith and credit to the judgment of the Kentucky court decreeing foreclosure of its mortgage, is entirely without merit. There is withdrawn from the state court only the power to enforce this judgment. The power of Congress under the bankruptcy clause to administer on and distribute all of a bankrupt's property necessarily embraces the power to halt state court proceedings against the bankrupt's property, where those proceedings have not resulted in divesting the bankrupt of his title and vesting it in a purchaser for value. The present general bankruptcy act (section 67 [11 USCA § 107]) provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void, in case he is adjudged a bankrupt, and that the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, unless the bankruptcy court shall order same to be preserved for the benefit of the bankrupt's estate. This provision of the statute has been invoked literally thousands of times to set aside judgment liens not based on contracts, and no court, so far as I am advised, has ever held that the statute violates the full faith and credit clause of the Constitution. It cannot be doubted that a discharge in bankruptcy applies to judgments, as well as to claims which have not been reduced to judgment. To limit the power of Congress under the bankruptcy provision of the Constitution by such a construction af the full faith and credit clause as is contended for here would not only render it practically impossible for Congress to pass any bankruptcy law extending to debtors the right of discharge, but in many cases would make it possible for a vigilant creditor, by state court proceedings, to secure an undue proportion of the bankrupt's estate.

Counsel for the bank suggest, but I do not understand that they seriously contend, that the act, because it applies only to farmers and to debts existing at the time it became

effective, is not uniform, as is required by the bankruptcy clause of the Constitution. Uniformity, as required by this provision of the Constitution, means territorial uniformity—not uniformity as between persons or classes of persons. Hanover National Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113; Leidigh Carriage Co. v. Stengel, 95 F. 637 (C. C. A. 6th Cir.). The act meets this test of uniformity.

For me this case has been one of unusual difficulty. I approached its consideration with a very definite conviction of its unconstitutionality. Frankly, I regret that on more mature deliberation I cannot conscientiously adhere to that view. I consider the legislation, in some of its provisions, unfair to creditors and unwise even as to farmer debtors, for it inevitably closes to them all private sources of long-time credit. These matters, however, involve questions of policy, which address themselves to Congress—not to the courts.

An order conforming to the views here expressed may be prepared and presented for entry.