In re JONES.

No. 3481.

District Court, W. D. Missouri, St. Joseph Division.

March 13, 1935.

166

John F. Reinhardt, of Kansas City, Mo., for Phœnix Joint Stock Land Bank, secured creditor.

R. M. Sheppard, of Kansas City, Mo., and Guy W. Runnion, of St. Joseph, Mo., for bankrupt.

OTIS, District Judge.

In this proceeding a secured creditor of the bankrupt, by exceptions to an order of the referee, challenges the validity under the Constitution of the so-called Frazier-Lemke Amendment to the Bankruptcy Act. 48 Stat. 1289, 11 USCA § 203 (s). In a number of other proceedings pending here the same challenge has been made. I have been favored with exhaustive and scholarly briefs by counsel and by amici curiæ and have given careful and painstaking consideration to the arguments attacking and defending the validity of this legislation. I have reached the conclusion, however, that a development during the pendency of this question here makes unnecessary an elaborate opinion.

 1. Since this submission the United States Circuit Court of Appeals for the Sixth Circuit has rendered a decision upholding the validity of the amendment as against attacks identical with those made upon it in this proceeding. The opinion of that court was handed down February 11, 1935, in the case of Louisville Joint Stock Land Bank v. Radford, 74 F.(2d) .576, affirming the judgment of the District Court for the Western District of Kentucky in the same case. In re Radford, 8 F. Supp. 489.

The opinion of the Circuit Court of Appeals at least demonstrates that the amendment, in the respects in which its validity is questioned here, is so probably a valid exercise of congressional power that its invalidity cannot be said to be beyond reasonable doubt. It is elementary that no court should rule a statute enacted by the Congress invalid unless its invalidity is beyond reasonable doubt. Railway Express Agency v. Virginia, 282 U. S. 440, 51 S. Ct. 201, 75 L. Ed. 450, 72 A. L. R. 102; Legal Tender Cases, 12 Wall. 457, 20 L. Ed. 287. When to that quite sufficient reason is added the further reason that the Supreme Court shortly will review the ruling of the Court of Appeals and so finally settle this controversy, and the still further reason that great confusion would result in this district from a declaration of the unconstitutionality of the amendment, enough certainly is presented to warrant a deference to the judgment of the Court of Appeals for the Sixth Circuit even although that judgment is not controlling in this circuit.

2. I do not find it necessary elaborately to discuss the questions raised by the challenge, but I shall say that my views coincide with those expressed by the Court of Appeals. While the Frazier-Lemke Act impresses me as unwise in many of its provisions and as almost incomprehensible in others, I do not think that it was not within the power of Congress to enact it.

What this act does to the secured creditor of a bankrupt best may be made clear by a suppositious case.

A, the owner of an 80-acre farm, on January 1, 1930, borrowed from B $5,000, giving to B his note for that amount, payable in five years, with interest at 6 per cent., and giving to B also, to secure the payment of the note, a deed of trust to his farm. The note was due January 1, 1935. B would have had the right, if the note was not paid when due, to sell the farm and to apply the proceeds to the payment of the note.

But A has petitioned to be adjudged a bankrupt in accordance with the provisions of the Frazier-Lemke Amendment. His farm has been appraised as of the fair value of $2,000. B has refused to consent to the sale by the trustee of the farm to A upon the terms authorized by the amendment and has objected in writing thereto. B has been deprived, however, of the right to cause A's farm to be sold and to apply the proceeds of the sale to the payment of the note.

The court is required to stay for five years all proceedings by B to enforce his deed of trust in accordance with its provisions. If, during that period, A pays semi-annually a reasonable rental on the farm, say in the amount of $60 (being 6 per cent. on a valuation of $2,000) and at the end of that period pays into court $2,000, the lien is ended and A is discharged from further obligation as to both the principal and the accumulated interest on the $5,000 note.

Such is the suppositious case.

Did Congress have the power to legislate so as to accomplish these results?

The only power claimed for Congress in this connection is in clause 4 of section 8 of article 1: "The Congress shall have Power * * * to establish * * * uniform Laws on the subject of Bankruptcies throughout the United States."

The Constitution does not define what is meant by the word "bankruptcies." The Supreme Court never has formulated an all-inclusive definition of the word. But a consideration of opinions of that and other courts dealing with the subject justifies us in saying that the purpose of bankruptcy is to secure finally to the creditors of a debtor distribution of the value of at least a part of his assets and to the bankrupt a discharge from his debts to the ends that the creditors may be paid as much as may be and that, in an economic sense, the bankrupt may have a new start in life. Whatever legislation is within that broad purpose is sufficiently related to the subject of bankruptcies to be within the power conferred on Congress by the Constitution.

Bankruptcy certainly does not involve a surrender of all a bankrupt's assets. What the law of the state in which he lives exempts from execution is saved to him. The theory is that it is better to leave to him the means with which to begin his rehabilitation and to save society from the burden of immediately supporting him and his family than to give to his creditors the last penny in value of his property.

None questions the right of Congress to allow a bankrupt to retain what the state law exempts. None could question the power of Congress itself directly to prescribe what exemptions, within reasonable limits, the bankrupt should have. Whatever amount reasonably might be said to be necessary to enable the bankrupt to begin his rehabilitation and to save him from becoming a burden to society, that amount Congress has the right to save to him notwithstanding bankruptcy.

If, for the attainment of such a purpose, Congress may save absolutely to the bankrupt a substantial part of his assets, why may it not, for the attainment of the same purpose, save to him the mere possession of all of his assets for a while, giving to his creditors for that period a reasonable rental for such assets and their fair value at the end of the period?

A negative answer to this question can be justified only upon the theory that the word "bankruptcies" as it is used in the Constitution necessarily is limited in meaning to its exemplification a century and a half ago. But none of the concepts of the Constitution is so limited. This one is not. While none of the concepts of the Constitution is so elastic that it may be distorted to defeat an end aimed at in its formulation, each is sufficiently elastic to enable its original purpose to be accomplished by varying means and methods.

In the light of this principle and of the purpose of bankruptcy, it cannot be said that the Frazier-Lemke Amendment is invalid simply because it postpones realization by the creditors of the fair value of the bankrupt's nonexempt assets, giving them meanwhile a reasonable rental, and allowing to the bankrupt temporary possession as a means of aiding him toward rehabilitation and of saving him from becoming a burden to society.

Of course this amendment impairs the obligations of contracts. Any bankruptcy act does that. Of course, it destroys private property. Any bankruptcy act does that. In these respects it presents nothing new.

It is new in that it impairs security given for a debt. No bankruptcy act has done that in the past. Instead of impairing

only one contract, it impairs two contracts —the primary contract to pay the debt, and the secondary contract to surrender on a stipulated date specific property in or toward payment of the debt. But as against bankruptcy one kind of contract is no more sacred than another. The power of Congress to provide for the discharge of debts through bankruptcy is not limited to any single class of debts. It includes secured debts as well as those which are not secured.

## Order

The exceptions to the order of the referee in bankruptcy having been duly considered by the court, and the court being fully advised in the premises, are by the court overruled. The order of the referee is confirmed and approved. It is so ordered.

To this order an exception is allowed.