**In re Richard Brian HUGGINS, Alice Mae Huggins, Debtors.**

**Bankruptcy No. 81–20195.**

United States Bankruptcy Court,
D. Kansas.

Aug. 19, 1981.

Richard Brian Huggins, Alice Mae Huggins, debtors.

Bill Wiswell, Olathe, Kan., for debtors.

Robert Schollars, Kansas City, Mo., for creditor, DFC.

John J. Lyons, Jr., Prairie Village, Kan., local counsel for creditor, DFC.

Henry W. Green, Leavenworth, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on June 17, 1981, upon the objection of Dial Finance Company of Kansas (DFC) to an application to avoid their lien. The debtors, Richard Brian Huggins and Alice Mae Huggins, were represented by Bill Wiswell. DFC was represented by Robert Schollars, who appeared by John J. Lyons, Jr., local counsel.

## FINDINGS OF FACT

The facts are not in dispute. The Court, after hearing arguments of counsel and examining the pleadings herein, finds as follows:

1. That the Court has jurisdiction over the parties and subject matter.

2. That on May 2, 1980, DFC loaned debtors $2,561.07. DFC took a nonpossessory, nonpurchase-money security interest in household goods and other personalty held primarily for the personal, family or household use of the debtors or their dependents.

3. That on May 14, 1980, said security interest was properly perfected. Said security interest vested after the October 1, 1979, effective date of the Bankruptcy Code.

4. That on March 3, 1981, debtors filed a voluntary petition under Chapter 7 of the Code. On May 7, 1981, debtors filed an Application to avoid DFC's lien.

5. That on May 19, 1981, DFC filed an objection to the application claiming that section 522(f)(2) is unconstitutional in that it is being deprived of a property right without due process of law.

## ISSUE

WHETHER § 522(f) EFFECTUATES AN UNCONSTITUTIONAL TAKING OF A SECURITY INTEREST VESTING *AFTER* THE *EFFECTIVE DATE* OF THE CODE.

## CONCLUSIONS OF LAW

Section 522(f) of the Bankruptcy Code states in relevant part as follows:

*"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—*

. . . . .

*(2) a nonpossessory, nonpurchase-money security interest in any—*
*(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;"*

DFC contends that § 522(f) results in an unconstitutional taking of a vested property interest without just compensation. DFC cites *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), as precedent for the proposition that Congress can impair contract rights under the bankruptcy power, but cannot take vested property rights. DFC's reliance on *Radford* is misplaced, however.

In *Radford*, the constitutionality of the original Frazier-Lemke Act of 1934 (48 Stat. 1289) was in question. The purpose of the Act was to provide a means for farmers to prevent foreclosure of their mortgages. Under the Act, a bankrupt farmer was permitted to obtain from a bankruptcy court, a five-year stay of state foreclosure proceedings. During this period the bankrupt was entitled to remain in possession of the property provided he pay a reasonable rent to the mortgagee. At the end of the five-year stay, the debtor was entitled to pay into the court the judicially appraised price of the property, and obtain the property free and clear of the original indebtedness. During the five-year period, the creditor lost the rights available to him under the mortgage terms, but was entitled to reasonable rental value and the appraised price of the real estate.

The Supreme Court held that the Frazier-Lemke Act *as applied*, violated the Fifth Amendment to the Constitution:

"*. . . But we have no occasion to decide in this case whether the bankruptcy clause confers upon Congress generally the power to abridge the mortgagee's rights in specific property. Paragraph 7 declares that 'the provisions of this Act shall apply only to debts existing at the time this Act becomes effective.' The power over property pledged as security after the date of the Act may be greater than over property pledged before; and this Act deals only with preexisting mortgages. Because the Act is retroactive in terms and as here applied purports to take away rights of the mortgagee in specific property, another provision of the Constitution is controlling.*" *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935).

Indeed, there is no precedent for the proposition that a statute providing for lien avoidance is unconstitutional when prospectively applied. Absent such precedent, this Court is bound by the canon of statutory construction that an Act of Congress is presumed constitutional. Furthermore,

"*It is a salutary principle of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it, . . .*" *Metropolitan Casualty Insurance Co. v. Brownell*, 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L.Ed. 1070 (1935).

DFC has not sustained its burden of establishing the unconstitutionality of § 522 (f)(2).

A bankruptcy act provision will not be found in violation of the Fifth Amendment unless it is so grossly arbitrary and unreasonable as to be incompatible with fundamental law. *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). DFC has not shown that § 522(f)(2) is unconstitutional under this test.

Section 522(f)(2) is neither grossly arbitrary or unreasonable. It gives the debtor a fresh start, by giving him essential household goods and furnishings free and clear of encumbrances. Congress reasonably determined that the debtor's fresh start was more important than the creditor's lien retention. As the legislative history points out:

"*Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.*

*In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditor's true intentions, are coerced into payments they simply cannot afford to make.*" H.R. Report No. 95–595, 95th Cong. 1st Sess., p. 127 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6088.

In other words, creditors do not want to retain their liens so that they can foreclose. They want to retain their liens so that they can threaten to foreclose. This coercion of repayment by the threat of foreclosure is the precise evil that § 522(f)(2) was intended to address.

Section 522(f)(2) remedies the evil in a reasonable manner. Although creditors no longer have their liens, they can still file proofs of claims and share in the possible distribution to unsecured creditors.

*In Re Webber*, 7 B.R. 580, 585 (Bkrtcy., D.Ore.1980), states in pertinent part, as follows:

"... *It is true that this right may not be worth much since in most cases there is an unlikelihood of any assets remaining for distribution. However, the chances of assets may in fact be no lower than the chances of a creditor's actually conducting a seizure of a debtor's used household furniture and furnishings under a 'blanket security interest' in the goods permitted under the old law....*"

The Court thus finds that § 522(f)(2) gives priority to a compelling interest (the debtor's fresh start) at the expense of an uncompelling interest (the creditor's retention of lien).

The Court further finds that section 522(f)(2) is constitutional as prospectively applied to security interests vesting after the effective date of the Code.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.