# HANOVER NATIONAL BANK *v.* MOYSES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TENNESSEE.

No. 203.   Argued and submitted April 7, 1902.—Decided June 2, 1902.

The bankruptcy law of 1898 is not unconstitutional because it provides that others than traders may be adjudged bankrupts; and that this may be done on voluntary petition.

Nor is it unconstitutional for want of uniformity because of its recognition of exemptions by the local law.

The notices provided for by the act are sufficient under the Constitution of the United States, and the discharge of the debtor under proceedings at his domicil authorized by Congress is valid throughout the United States.

This was an action brought by the Hanover National Bank of New York against Max Moyses in the Circuit Court of the

United States for the Eastern District of Tennessee, November 20, 1899, on a judgment recovered against him in the Circuit Court of Washington County, Mississippi, December 12, 1892.

The amended declaration averred the execution of a certain promissory note by defendant payable to the bank of Greenville, Mississippi; the endorsement thereof to plaintiff in New York; default in payment, suit in the state court of Mississippi having jurisdiction *in personam* against defendant, who was then a citizen and resident thereof; recovery of judgment; and that the judgment "still remains in full force and effect, unappealed from, unreversed, or otherwise vacated, and the plaintiff hath not obtained any execution or satisfaction thereof." It was also averred that after the rendition of the judgment in Mississippi, defendant changed his domicil and residence to the State of Tennessee, and thereafter, "not being a merchant or a trader, nor engaged in business or in any commercial pursuits, nor using the trade of merchandise, and being without mercantile business of any kind, filed his voluntary petition in bankruptcy in the District Court of the United States for the Southern Division of said Eastern District of Tennessee, under the act of Congress of the United States of America, approved July 1, 1898, entitled 'An act to establish a uniform system of bankruptcy throughout the United States,'" and was adjudged bankrupt, and "since August 1, 1898," "granted an adjudication of his discharge in bankruptcy from all of his debts, including that herein sued for." 30 Stat. 544, July 1, 1898, c. 541.

It was admitted that the discharge was "good and effectual if said act of Congress and the proceedings thereunder are valid," but charged that the act was void because in violation of the Federal Constitution in many particulars set forth.

Plaintiff also stated that it was and had continued to be domiciled in and resident in New York; that it was not a party to said proceedings in bankruptcy, nor did it enter its appearance therein for any purpose, nor did it prove its claim, nor did it in any way subject itself to the jurisdiction of the District Court in said proceedings; that plaintiff was not served with process

of any kind on said petition for adjudication, and had no notice, personal or otherwise, of the said proceeding by voluntary petition for adjudication; nor was any notice of the proceeding to adjudicate defendant a bankrupt given plaintiff, or any one else, " nor is any notice of any kind of such proceeding to adjudicate a person a bankrupt upon his voluntary petition required by said act of Congress, and in this said act of Congress violates the Fifth Amendment," as does the " adjudication of defendant as a bankrupt;" that the *situs* of the promissory note, on which the judgment was rendered, was never within the jurisdiction of the District Court; and that the court never acquired jurisdiction of plaintiff nor of the debt sued on.

Demurrer was filed to the amended declaration, the demurrer sustained, and final judgment entered dismissing the suit. The Circuit Court stated that it took this action on the authority of *Leidigh Carriage Company* v. *Stengel*, 95 Fed. Rep. 637. Thereupon the bank brought this writ of error.

Errors were specified as follows: That the discharge under the act of Congress of July 1, 1898, was a nullity, because:

" 1. Said act violates the Fifth Amendment to the Constitution of the United States in this:

" (*a*) It does not provide for notice as required by due process of law to the creditor in voluntary proceedings for adjudication of bankruptcy and for the discharge of the debt of the creditor.

" (*b*) Ten days' notice by mail to creditors to oppose discharge is so unreasonably short as to be a denial of notice.

" (*c*) The grounds of opposition to a discharge are so unreasonably limited as, substantially, to deny the right of opposition to a discharge. Thereby the act is also practically a legislative promulgation of a discharge contrary to article III, section 1, of the Federal Constitution.

" 2. Said act violates article I, section 8, paragraph 4, of the Constitution in this:

" (*a*) It does not establish uniform laws on the subject of bankruptcies throughout the United States.

" (*b*) It delegates certain legislative powers to the several States in respect to bankruptcy proceedings.

" (c) It provides that others than traders may be adjudged bankrupts, and that this may be done on voluntary petitions."

*Mr. Marcellus Green* for plaintiff in error.

*Mr. George White* for defendant in error submitted on his brief.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

By the fourth clause of section eight of article I of the Constitution the power is vested in Congress " to establish  .  .  . uniform laws on the subject of bankruptcies throughout the United States."  This power was first exercised in 1800.  2 Stat. 19, c. 19.  In 1803 that law was repealed.  2 Stat. 248, c. 6, In 1841 it was again exercised by an act which was repealed in 1843.  5 Stat. 440, c. 9; 5 Stat. 614, c. 842.  It was again exercised in 1867 by an act which, after being several times amended, was finally repealed in 1878.  14 Stat. 517, c. 176; 20 Stat. 99, c. 160.  And on July 1, 1898, the present act was approved.

The act of 1800 applied to " any merchant, or other person, residing within the United States, actually using the trade of merchandise, by buying or selling in gross, or by retail, or dealing in exchange, or as a banker, broker, factor, underwriter, or marine insurer," and to involuntary bankruptcy.

In *Adams* v. *Storey*, 1 Paine, 79, Mr. Justice Livingston said on circuit: "So exclusively have bankrupt laws operated on traders, that it may well be doubted, whether an act of Congress subjecting to such a law every description of persons within the United States, would comport with the spirit of the powers vested in them in relation to this subject."  But this doubt was resolved otherwise, and the acts of 1841 and 1867 extended to persons other than merchants or traders, and provided for voluntary proceedings on the part of the debtor, as does the act of 1898.

It is true that from the first bankrupt act passed in England, 34 & 35 Hen. VIII, c. 4, to the days of Queen Victoria, the

English bankrupt acts applied only to traders, but, as Mr. Justice Story, in his Commentaries on the Constitution, pointed out, "this is a mere matter of policy, and by no means enters into the nature of such laws. There is nothing in the nature or reason of such laws to prevent their being applied to any other class of unfortunate and meritorious debtors." § 1113.

The whole subject is reviewed by that learned commentator in chapter XVI, §§ 1102 to 1115 of his works, and he says (§ 1111) in respect of "what laws are to be deemed bankrupt laws within the meaning of the Constitution:" "Attempts have been made to distinguish between bankrupt laws and insolvent laws. For example, it has been said, that laws, which merely liberate the person of the debtor, are insolvent laws, and, those, which discharge the contract, are bankrupt laws. But it would be very difficult to sustain this distinction by any uniformity of laws at home or abroad. . . . Again, it has been said, that insolvent laws act on imprisoned debtors only at their own instance; and bankrupt laws only at the instance of creditors. But, however true this may have been in past times, as the actual course of English legislation, it is not true, and never was true, as a distinction in colonial legislation. In England it was an accident in the system, and not a material ground to discriminate, who were to be deemed in a legal sense insolvents, or bankrupts. And if an act of Congress should be passed, which should authorize a commission of bankruptcy to issue at the instance of the debtor, no court would on this account be warranted in saying that the act was unconstitutional, and the commission a nullity. It is believed, that no laws ever were passed in America by the colonies or States, which had the technical denomination of 'bankrupt laws.' But insolvent laws, quite coextensive with the English bankrupt system in their operations and objects, have not been unfrequent in colonial and state legislation. No distinction was ever practically, or even theoretically, attempted to be made between bankruptcies and insolvencies. And a historical review of the colonial and state legislation will abundantly show, that a bankrupt law may contain those regulations, which are generally found in insolvent laws; and that an insolvent law may contain those, which are common to bankrupt laws."

*Sturges* v. *Crowninshield*, 4 Wheat. 122, 195, was cited, where. Chief Justice Marshall said : " The bankrupt law is said to grow out of the exigencies of commerce, and to be applicable solely to traders; but it is not easy to say who must be excluded from, or may be included within, this description. It is, like every other part of the subject, one on which the legislature may exercise an extensive discretion. This difficulty of discriminating with any accuracy between insolvent and bankrupt laws, would lead to the opinion, that a bankrupt law may contain those regulations which are generally found in insolvent laws; and that an insolvent law may contain those which are common to a bankrupt law."

In the case, *In re Klein*, decided in the Circuit Court for the District of Missouri, and reported in a note to *Nelson* v. *Carland*, 1 How. 265, 277, Mr. Justice Catron held the bankrupt act of 1841 to be constitutional, although it was not restricted to traders, and allowed the debtor to avail himself of the act on his own petition, differing in these particulars from the English acts. He said among other things : " In considering the question before me, I have not pretended to give a definition ; but purposely avoided any attempt to define the mere word ' bankruptcy.' It is employed in the Constitution in the plural, and as part of an expression ; ' the subject of bankruptcies.' The ideas attached to the word in this connection, are numerous and complicated ; they form a subject of extensive and complicated legislation ; of this subject, Congress has general jurisdiction; and the true inquiry is—to what limits is that jurisdiction restricted ? I hold, it extends to all cases where the law causes to be distributed, the property of the debtor among his creditors; this is its least limit. Its greatest, is the discharge of a debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress. With the policy of a law, letting in all classes,—others as well as traders ; and permitting the bankrupt to come in voluntarily, and be discharged without the consent of his creditors, the courts have no concern ; it belongs to the lawmakers."

Similar views were expressed under the act of 1867, by Mr. Justice Blatchford, then District Judge, in *In re Reiman*, 7 Ben. 455; by Deady, J., in *In re Silverman*, 1 Sawyer, 410; by Hoffman, J., in *In re California Pacific Railroad Company*, 3 Sawyer, 240; and in *Kunzler* v. *Kohaus*, 5 Hill, 317, by Cowen, J., in respect of the act of 1841, in which Mr. Justice Nelson, then Chief Justice of New York, concurred. The conclusion that an act of Congress establishing a uniform system of bankruptcy throughout the United States, is constitutional, although providing that others than traders may be adjudged bankrupts, and that this may be done on voluntary petitions, is really not open to discussion.

The framers of the Constitution were familiar with Blackstone's Commentaries, and with the bankrupt laws of England, yet they granted plenary power to Congress over the whole subject of " bankruptcies," and did not limit it by the language used. This is illustrated by Mr. Sherman's observation in the Convention, that " bankruptcies were, in some cases, punishable with death by the laws of England, and he did not choose to grant a power by which that might be done here;" and the rejoinder of Gouverneur Morris, that " this was an extensive and delicate subject. He would agree to it, because he saw no danger of abuse of the power by the legislature of the United States." Madison Papers, 5 Elliot, 504; 2 Bancroft, 204. And also to some extent by the amendment proposed by New York, " that the power of Congress to pass uniform laws concerning bankruptcy shall only extend to merchants and other traders; and the States, respectively, may pass laws for the relief of other insolvent debtors." 1 Elliot, 330. See also Mr. Pinkney's original proposition, 5 Elliot, 488; the report of the committee thereon, 5 Elliot, 503; and The Federalist, No. 42, Ford's ed. 279.

As the States, in surrendering the power, did so only if Congress chose to exercise it, but in the absence of Congressional legislation retained it, the limitation was imposed on the States that they should pass no " law impairing the obligation of contracts."

In *Brown* v. *Smart*, 145 U. S. 454, 457, Mr. Justice Gray

said : " So long as there is no national bankrupt act, each State has full authority to pass insolvent laws binding persons and property within its jurisdiction, provided it does not impair the obligation of existing contracts; but a state cannot by such a law discharge one of its own citizens from his contracts with citizens of other States, though made after the passage of the law, unless they voluntarily become parties to the proceedings in insolvency.   Yet each State, so long as it does not impair the obligation of any contract, has the power by general laws to regulate the conveyance and disposition of all property, personal or real, within its limits and jurisdiction."   Many cases were cited, and, among others, *Denny* v. *Bennett*, 128 U. S. 498, where Mr. Justice Miller observed : "The objection to the extraterritorial operation of a state insolvent law is, that it cannot, like the bankruptcy law passed by Congress under its constitutional grant of power, release all debtors from the obligation of the debt.   The authority to deal with the property of the debtor within the State, so far as it does not impair the obligation of contracts, is conceded."

Counsel justly says that " the relation of debtor and creditor has a dual aspect and contains two separate elements.   The one is the right of the creditor to resort to present property of the debtor through the courts to satisfy the debt ; the other is the personal obligation of the debtor to pay the debt, and that he will devote his energies and labor to discharge it," 4 Wheat. 198 ; and " in the absence of property the personal obligation to pay constitutes the only value of the debt."   Hence the importance of the distinction between the power of Congress and the power of the States.   The subject of " bankruptcies " includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property.   The grant to Congress involves the power to impair the obligation of contracts, and this the States were forbidden to do.

The laws passed on the subject must, however, be uniform throughout the United States, but that uniformity is geographical and not personal, and we do not think that the provision of the act of 1898 as to exemptions is incompatible with the rule.

Section 6 reads : " This act shall not affect the allowance to bankrupts of their exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

Section 14 of the act of 1867 prescribed certain exemptions, and then added : " And such other property not included in the foregoing exceptions as is exempted from levy and sale upon execution or other process or order of any court by the laws of the State in which the bankrupt has his domicile at the time of the commencement of the proceedings in bankruptcy, to an amount not exceeding that allowed by such state exemption laws in force in the year eighteen hundred and sixty-four." This was subsequently amended, and controversies arose under the act as amended which we need not discuss in this case. Lowell on Bankruptcy, § 4.

It was many times ruled that this provision was not in derogation of the limitation of uniformity because all contracts were made with reference to existing laws, and no creditor could recover more from his debtor than the unexempted part of his assets.    Mr. Justice Miller concurred in an opinion to that effect in the case of *Beckerford*, 1 Dillon, 45.

Mr. Chief Justice Waite expressed the same opinion in *In re Deckert*, 2 Hughes, 183.    The Chief Justice there said : " The power to except from the operation of the law property liable to execution under the exemption laws of the several States, as they were actually enforced, was at one time questioned, upon the ground that it was a violation of the constitutional requirement of uniformity, but it has thus far been sustained, for the reason that it was made a rule of the law, to subject to the payment of debts under its operation only such property as could by judicial process be made available for the same purpose. This is not unjust, as every debt is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors.    One of the effects of a bankrupt law is that

of a general execution issued in favor of all the creditors of the bankrupt, reaching all his property subject to levy, and applying it to the payment of all his debts according to their respective priorities. It is quite proper, therefore, to confine its operation to such property as other legal process could reach. A rule which operates to this effect throughout the United States is uniform within the meaning of that term, as used in the Constitution."

We concur in this view, and hold that the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each State whatever would have been available to the creditors if the bankrupt law had not been passed. The general operation of the law is uniform although it may result in certain particulars differently in different States.

Nor can we perceive in the recognition of the local law in the matter of exemptions, dower, priority of payments, and the like, any attempt by Congress to unlawfully delegate its legislative power. *In re Rahrer, Petitioner,* 140 U. S. 545, 560.

But it is contended that as to voluntary proceedings the act is in violation of the Fifth Amendment in that it deprives creditors of their property without due process of law in failing to provide for notice.

The act provides that " any person who owes debts, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt," (§ 4a,) and that " upon the filing of a voluntary petition the judge shall hear the petition and make the adjudication or dismiss the petition." § 18 g. With the petition he must file schedules of his property, and " of his creditors, showing their residences, if known, if unknown, that fact to be stated." § 7, subd. 8. The schedules must be verified, and the petition must state that " petitioner owes debts which he is unable to pay in full," and " that he is willing to surrender all his property for the benefit of his creditors, except such as is exempt by law." This establishes those facts so far as a decree of bankruptcy is concerned, and he has committed an act of bankruptcy in filing the petition. These are not issu-

able facts, and notice is unnecessary, unless dismissal is sought, when notice is required. § 59 *g.*

As Judge Lowell said: " He may be, in fact, fraudulent, and able and unwilling to pay his debts; but the law takes him at his word, and makes effectual provision, not only by civil but even by criminal process to effectuate his alleged intent of giving up all his property." *In re Fowler*, 1 Lowell, 161.

Adjudication follows as matter of course, and brings the bankrupt's property into the custody of the court for distribution among all his creditors. After adjudication the creditors are given at least ten days' notice by publication and by mail of the first meeting of creditors, and of each of the various subsequent steps in administration. § 58. Application for a discharge cannot be made until after the expiration of one month from adjudication. § 14.

Form No. 57 gives the form of petition for discharge and the order for hearing to be entered thereon, requiring notice to be published in a designated newspaper printed in the district, and " that the clerk shall send by mail to all known creditors copies of said petition and this order, addressed to them at their places of residence as stated."

Section 14 *b* provides for the granting of discharge unless the applicant has " (1) committed an offence punishable by imprisonment as herein provided; or (2) with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained."

The offences referred to are enumerated in section 29, and embrace misappropriation of property; concealing property belonging to the estate; making false oaths or accounts; presenting false claims; receiving property from a bankrupt with intent to defeat the act; extorting money for acting or forbearing to act in bankruptcy proceedings.

It is also provided by section 15 that a discharge may be revoked, on application within a year, if procured by fraud and not warranted by the facts.

Notwithstanding these provisions, it is insisted that the want of notice of filing the petition is fatal because the adjudication

*per se* entitles the bankrupt to a discharge, and that the proceedings in respect of discharge are *in personam*, and require personal service of notice. The adjudication does not in itself have that effect, and the first of these objections really rests on the ground that the notice provided for is unreasonably short, and the right to oppose discharge unreasonably restricted. Considering the plenary power of Congress, the subject-matter of the suit, and the common rights and interests of the creditors, we regard the contention as untenable.

Congress may prescribe any regulations concerning discharge in bankruptcy that are not so grossly unreasonable as to be incompatible with fundamental law, and we cannot find anything in this act on that subject which would justify us in overthrowing its action.

Nor is it possible to concede that personal service of notice of the application for a discharge is required.

Proceedings in bankruptcy are, generally speaking, in the nature of proceedings *in rem*, as Mr. Justice Grier remarked in *Shawhan* v. *Wherritt*, 7 How. 643. And in *New Lamp Chimney Company* v. *Brass and Copper Company*, 91 U. S. 662, it was ruled that a decree adjudging a corporation bankrupt is in the nature of a decree *in rem* as respects the *status* of the corporation. Creditors are bound by the proceedings in distribution on notice by publication and mail, and when jurisdiction has attached and been exercised to that extent, the court has jurisdiction to decree discharge, if sufficient opportunity to show cause to the contrary is afforded, on notice given in the same way. The determination of the *status* of the honest and unfortunate debtor by his liberation from encumbrance on future exertion is matter of public concern, and Congress has power to accomplish it throughout the United States by proceedings at the debtor's domicil. If such notice to those who may be interested in opposing discharge, as the nature of the proceeding admits, is provided to be given, that is sufficient. Service of process or personal notice is not essential to the binding force of the decree.

*Judgment affirmed.*