In re James Leonard HEAD, Debtor.

James Leonard HEAD, Plaintiff,

v.

HOME CREDIT COMPANY, Defendant.

In re Richard Carlos BYRD and Martha June Byrd, Debtors.

Richard Carlos BYRD and Martha June Byrd, Plaintiffs,

v.

HOME CREDIT COMPANY, Defendant.

Bankruptcy Nos. 3–79–00766, 3–79–00863. Adv. Nos. 3–79–0055, 3–79–0056.

United States Bankruptcy Court, D. Tennessee.

May 20, 1980.

Robert B. Carter, Johnson City, Tenn., for plaintiffs.

Rowland E. Verran, Johnson City, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The question before this court is whether the lien avoidance provisions of section 522(f) of the Bankruptcy Reform Act of 1978 constitutes a taking of property without due process of law under the Fifth Amendment.[1] Specifically, the question relates to two security agreements entered into prior to the effective date of the Reform Act.[2]

### I

The facts are essentially the same in both cases and involve loans of money. (1) On December 4, 1978, the plaintiff, James Head, executed a promissory note to Home Credit Company and granted the lender a security interest in certain household goods and furnishings. (2) On June 6, 1979, the plaintiffs, Richard and Martha Byrd, executed a promissory note to Home Credit

---

1. "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—
  (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; . . ." 11 U.S.C. § 522(f).
"No person shall . . . be deprived of life, liberty or property, without due process of law; . . ." U.S.Const. Amend. V.

2. The security agreements in these cases were executed between the date of the enactment of the Reform Act, November 6, 1978, and the effective date of the Act, October 1, 1979. "Except as otherwise provided in this title, this Act shall take effect October 1, 1979." Sec. 402, Pub.L. 95–598, November 6, 1978, 92 Stat. 2549.

Company and granted the lender a security interest in certain household goods and furnishings.

Head filed a petition in bankruptcy on November 7, 1979. He listed Home Credit as a secured creditor and claimed the household goods and appliances as exempt under section 522(d)(3).[3] The Byrds filed a petition in bankruptcy on December 3, 1979, listing Home Credit as a secured creditor and claiming the household goods and appliances as exempt under section 522(d)(3). Thereafter, complaints were filed by the plaintiffs to avoid the fixing of a lien on the exempt property pursuant to section 522(f). Home Credit answered that applying section 522(f) to the security agreements involved in these cases would constitute the taking of property without due process of law.

## II

Article 1, section 8, clause 4 of the Constitution of the United States grants to Congress the power to establish "uniform laws on the subject of Bankruptcies throughout the United States." It has long been recognized that "a court of bankruptcy may affect the interests of lienholders in many ways." *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, at 470, 57 S.Ct. 556, at 565, 81 L.Ed. 736 (1937). As applied by the *Wright* Court, the question is "whether the legislation modifies the secured creditor's rights, remedial or substantive, to such an extent as to deny the due process of law guaranteed by the Fifth Amendment."

It is true that the application of section 522(f) will modify Home Credit's rights. "[A]ny exercise of the bankruptcy power impairs the obligation of contracts, such impairment is not to be taken as in itself a denial of due process. For the provisions of the act to violate the amendment, they must be so grossly arbitrary and unreasonable as to be 'incompatible with fundamen-

tal law'. *Hanover Nat. Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1901)." *Campbell v. Allegheny Corp.*, 4 Cir., 75 F.2d 947, 953 (1935).

In *Continental Bank v. Rock Island Ry.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935), the Supreme Court, in speaking of the right of Congress to impair the obligation of contracts in bankruptcy law, said at page 680, 55 S.Ct. at page 608:

"The Constitution, as it many times has been pointed out, does not in terms prohibit Congress from impairing the obligation of contracts as it does the states. But as far back as *Calder v. Bull*, 3 Dall. 386, 388, [1 L.Ed. 648,] it was said that among other acts which Congress could not pass without exceeding its authority [5] was 'a law that destroys or impairs the lawful private contracts of citizens.' The broad reach of that statement has been restricted (*Legal Tender Cases*, 12 Wall. 457, 549–550, [20 L.Ed. 287]); but the principle which it includes has never been repudiated, although the extent to which it may be carried has not been definitely fixed. Speaking generally, it may be said that Congress, while without power to impair the obligation of contracts by laws acting directly and independently to that end, undeniably, has authority to pass legislation pertinent to any of the powers conferred by the Constitution, however it may operate collaterally or incidentally to impair or destroy the obligation of private contracts. *Legal Tender Cases*, supra; *Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467, 480–482, 484 [31 S.Ct. 265, 269–270, 271, 55 L.Ed. 297]; *Highland v. Russell Car Co.*, 279 U.S. 253, 261 [49 S.Ct. 314, 316, 73 L.Ed. 688.] And under the express power to pass uniform laws on the subject of bankruptcies, the legislation is valid though drawn with the direct aim and effect of relieving insolvent persons in

---

3. "The following property may be exempted under subsection (b)(1) of this section: . . . (3) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor." 11 U.S.C. § 522(d)(3) (1978).

whole or in part from the payment of their debts. See *Hanover National Bank v. Moyses*, supra, [186 U.S. 181] at p. 188 [22 S.Ct. 857 at 860, 46 L.Ed. 1113]. So much necessarily results from the nature of the power, and this must have been within the contemplation of the framers of the Constitution when the power was granted."

 The avoidance of nonpurchase money liens on household furnishings is not only reasonable but essential in meeting the plainly enunciated Congressional intent to give debtors resorting to bankruptcy a "fresh start". Historically certain property has been sanctioned as exempt from attachment by creditors. Such property includes clothing, bedding, household furniture and other necessary articles. 3 *Collier on Bankruptcy*, ¶ 522.01 (15th Ed.1979). The purpose of allowing exemptions is to provide the debtor with sufficient property to support himself and his dependents and to make a fresh start. This purpose would be defeated if nonpurchase money creditors were allowed to repossess necessary household furniture. Section 522(f) was enacted to protect "the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property". House Report No. 95–595, 95th Cong. 1st Sess. (1977) 362; U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862. By permitting debtors to avoid nonpurchase money security interests on household furnishings, Congress recognized a fact that had long been known throughout the credit industry—that the taking of a security interest in used household furnishings, even though upon liquidation the property is of minimal or no value, enables the creditor to use the threat of repossession to obtain reaffirmation agreements of discharged debts.

Home Credit, purportedly relying on the legislative history argues that section 522(f) should not apply retroactively to contracts entered into prior to October 1, 1979. However, a correct reading of the legislative history indicates that Congress intended that the substantive provisions of the new Code would apply to all *cases* filed after October 1. House Report, supra, at

459. These cases were filed after that date. Section 522(f) therefore may be invoked by the debtors to avoid plaintiffs' liens.

The law is that parties to contracts are chargeable with knowledge that their rights and remedies are affected by existing and *future* bankruptcy laws. *In re Prima Co.*, 88 F.2d 785 (CCA 7th Cir. 1937). The delay of over eleven months between the enactment of the Bankruptcy Code and its effective date gave creditors adequate time to familiarize themselves with the provisions of the Code and the effects it would have on their relationships with debtors. In the instant cases, both loans were negotiated *after* the enactment of the statute. Home Credit cannot say that the effect of the Code on its purported lien rights was a total surprise.

For these reasons this Court finds that the provisions of section 522(f) of the Bankruptcy Code are constitutional as applied to the contracts involved in these proceedings. Further, Home Credit's liens on the household goods and appliances of plaintiffs, Head and the Byrds, claimed by them as exempt, may be avoided.

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.