**In re Robert Ray FISHER fdba Fisher Trucking and Alayna Nadine Fisher, Debtors.**

**Robert Ray FISHER fdba Fisher Trucking and Alayna Nadine Fisher, Debtors–Plaintiffs,**

**v.**

**LIBERTY LOAN CORPORATION, Defendant.**

**Bankruptcy No. 580–409.
Adversary No. 580–0150.**

United States Bankruptcy Court, N. D. Ohio.

Sept. 19, 1980.

Terrence J. Steel, Akron, Ohio, for creditor.

Carl Hirsch, Barberton, Ohio, for debtors.

Kathryn A. Belfance, Akron, Ohio, Trustee.

## FINDING AS TO COMPLAINT TO AVOID NONPURCHASE–MONEY SECURITY INTEREST

H. F. WHITE, Bankruptcy Judge.

A joint voluntary petition under chapter 7 of the Bankruptcy Code was filed by Robert Ray Fisher and Alayna Nadine Fisher, husband and wife, hereinafter referred to as Debtors, on April 1, 1980.

A report of trustee in no–asset case was filed by Kathryn Belfance, trustee of the estate of the Debtors, on April 29, 1980.

A discharge was granted to the debtors on July 16, 1980.

A complaint to avoid the nonpurchase-money security interest of Liberty Loan Corporation on Debtors' household goods, pursuant to 11 U.S.C. § 522(f), was filed by Debtors on July 15, 1980.

An answer to said complaint denying that the lien held by Liberty Loan Corporation could be avoided pursuant to 11 U.S.C. § 522(f) was filed by Liberty Loan Corporation, hereinafter referred to as Creditor, on August 5, 1980. Specifically, Creditor contends in its answer that: (1) The security agreement between the parties pre–dates the enactment of the Bankruptcy Code and the Bankruptcy Code may not be applied retrospectively and (2) Pursuant to the provisions of Ohio Rev.Code § 2329.661 no exemption exists under Ohio law which may be utilized to avoid liens pursuant to 11 U.S.C. § 522(f).

At the pre–trial conference held on August 27, 1980, the parties agreed that there was no dispute as to the facts and submitted the case on the issues of law. However, in order to clarify the issues, this Court makes the following finding of Fact and Law.

### FINDING OF FACT

1. Debtors, in Schedule B–4 of their petition, claimed their household goods and furniture exempt in the amount of $800.00, with no particular item exceeding $200.00, under Ohio Rev.Code § 2329.66.

2. No parties in interest objected to the property claimed exempt by the debtors.

3. Liberty Loan Corporation granted Debtors a loan in the principal amount of $2,108.27, plus financing charges, on August 3, 1978.

4. As security for said loan, Liberty Loan took a security interest in the following property of the Debtors: brown plaid divan, black divan, brown chair, end tables, gold carpet, table lamps, swag lamp, tweed rug, double bed, oak chest, baby bed, metal bed, dressers with mirrors, twinsize bed, refrigerator, sewing machine, washer, iron, toaster, mixer, dishwasher, dryer, stereo, can opener, coffee maker, electric griddle and electric broiler oven (hereinafter referred to as household goods and furniture).

5. The security interest of Liberty Loan Corporation is a nonpossessory, nonpurchase–money security interest in household goods and furniture.

6. The balance on the loan now due Liberty Loan was listed by Debtors as $2,314.00. Liberty Loan has not filed a proof of claim. Liberty Loan therefore has a secured claim of $800.00 and an unsecured claim of $1,514.00.

### ISSUES

1. Whether, pursuant to 11 U.S.C. § 522(f), the debtors can avoid nonpossessory, nonpurchase-money security interests that impair exemptions on certain household and personal goods, notwithstanding Ohio Revised Code Ann. § 2329.661(C)?

2. Whether 11 U.S.C. § 522(f) can be applied retrospectively to contractual obligations made prior to the enactment date of the new Bankruptcy Code?

### DISCUSSION OF LAW

Debtors have claimed their household goods exempt under Ohio Rev.Code § 2329.-66(A)(4)(b) and are attempting to avoid the nonpurchase–money security interest of Creditor on said household goods pursuant to 11 U.S.C. § 522(f). This conflicts with the language of Ohio Rev.Code § 2329.-661(C). However, it will be shown that the federal bankruptcy statute, 11 U.S.C.

§ 522(f), is superior to the state exemption statute, Ohio Rev.Code § 2329.661(C).

11 U.S.C. § 522(f) provides that:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs *an exemption to which the debtor would have been entitled under subsection (b) of this section,* if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase–money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor. (Emphasis mine)

The language "an exemption to which the debtor would have been entitled under subsection (b) of this section" is the basis of the dispute herein. The other qualifications for avoidance under § 522(f) are met in that the secured claim of Creditor is a nonpossessory, nonpurchase–money security interest in household goods that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

Subsection (b) of section 522 gives the debtor a choice of exempting from property of the estate either:

(1) Property that is specified under subsection (d) of 11 U.S.C. § 522, unless the State law of the State in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition specifically does not so authorize; or

(2) Any property that is exempt under Federal law, other than 11 U.S.C. § 522(d), or under State law of the State in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition.

The General Assembly of the State of Ohio, pursuant to the authority granted it in 11 U.S.C. § 522(b)(1) "opted out" of the Federal exemptions, under 11 U.S.C. § 522(d), by enacting Ohio Rev.Code § 2329.662. Section 2329.662 of the Ohio Rev.Code provides that:

Pursuant to the "Bankruptcy Reform Act of 1978," 92 Stat. 2549, 11 U.S.C.A. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt property specified in the "Bankruptcy Reform Act of 1978". 92 Stat. 2549, 11 U.S.C.A. 522(d).

■ Thus, a debtor domiciled in Ohio is precluded from selecting the Federal Exemptions listed in 11 U.S.C. § 522(d). A debtor domiciled in Ohio may only exempt from his estate, property that is specified under Ohio Rev.Code 2329.66.

Ohio Rev.Code § 2329.66(A)(4)(b) entitles the debtor to hold exempt:

. . . the person's interest, not to exceed two hundred dollars in any particular item, in household furnishings, household goods, appliances, . . ., that are held primarily for the personal, family, or household use of the person.

In a recent case, dealing with the identical issue before the court herein, the court observed that:

. . ., if the *Ohio law* extended *no* further, unquestionably this debtor would be entitled to exemption of her household goods and furnishings and would be able to avoid the fixing of a lien against that interest. However, Ohio has apparently taken a quantum leap beyond the permissive language of Subsection 522(b).

*Matter of Cox,* 4 B.R. 240 at 242 (Bkrtcy. S.D.Ohio 1980).

Ohio Revised Code § 2329.661(C) provides that:

Section 2329.66 of the Revised Code does not affect or invalidate any sale, contract of sale, conditional sale, security interest, or pledge of any personal property or any lien created thereby.

The effect of Ohio Rev.Code § 2329.661(C) is to deny debtors domiciled in Ohio the availability of 11 U.S.C. § 522(f) to avoid the fixing of certain liens. Congress enacted 11 U.S.C. § 522(f) to protect the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. H.R.Rep. No. 595, 95th Cong. 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; S.Rep. 989, 95th Cong. 2nd Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

As stated in *Cox*, supra:

The pivotal question that surfaces is whether Congress intended to not only allow States to determine which list of exemptions would be available to a debtor, but also to permit State law to modify or preempt other substantive areas of the Bankruptcy Code. Id.

◼ This court agrees with the court in *Cox* that: "A close scrutiny of the Bankruptcy Code produces no specific authority for the States to enact laws beyond selecting debtor exemption entitlements." Id. *Collier on Bankruptcy* supports this view and states that subsection (f) (of 11 U.S.C. § 522) grants this avoiding power with regard to any exemption allowed under subsection (b) (of 11 U.S.C. § 522) including the state option. If a state opts out of the federal exemption, it does not affect the debtor's power under subsection (f). *3 Colliers on Bankruptcy,* Section 522.29 (15th ed. 1979).

◼ Pursuant to the supremacy clause, Article VI, clause 2 of the United States Constitution, any state legislation which frustrates the full effectiveness of federal law is rendered invalid. *Perez v. Campbell*, 402 U.S. 637, at 652, 91 S.Ct. 1704 at 1712, 29 L.Ed.2d 233 (1971); See *Moore v. Bay*, 284 U.S. 4 at 5, 52 S.Ct. 3 at 3, 76 L.Ed. 133 (1931); *Globe Bank v. Martin*, 236 U.S. 288 at 298, 35 S.Ct. 377 at 380, 59 L.Ed. 583 (1914).

A statute of the State of Ohio, Ohio Rev. Code 2329.661(C), purports to prevent the operation of a federal bankruptcy statute; 11 U.S.C. § 522(f). Subject to the general limitation on state powers as the prohibition against impairing the obligations of contracts, a state may pass and enforce insolvency and even "bankruptcy" laws, binding upon persons and property within its jurisdiction, whenever there is no act of Congress extant with which state law would conflict. *Internat. Shoe Co. v. Pinkus*, 278 U.S. 261 at 263–64, 49 S.Ct. 108 at 109, 73 L.Ed. 318 (1929).

◼ Ohio Rev.Code § 2329.661(C) which provides that Ohio Rev.Code § 2329.66, the Ohio exemption statute, does not affect or invalidate security interests is in conformance with the constitutional prohibition of article I, section 10 of the Constitution of the United States, against any state law impairing the obligation of contracts and is applicable in state courts. However, Ohio Rev.Code § 2329.661(C) is in direct conflict with 11 U.S.C. § 522(f) and the act of Congress prevails over the unauthorized, conflicting state law.

Pursuant to 11 U.S.C. § 522(f), Debtors are attempting to avoid Creditor's nonpurchase-money security interest in household goods that was obtained prior to the enactment date of the new Bankruptcy Code. Creditor contends that 11 U.S.C. § 522(f) cannot be applied retrospectively.

The power to legislate on the subject of bankruptcies is conferred expressly upon Congress by the Constitution of the United States. Article I, section 8, clause 4 of the United States Constitution provides: "The Congress shall have power . . . [to make] uniform laws on the subject of bankruptcies throughout the [land]." In addition to this express grant, there is the general grant of power under article I, section 8 clause 18 that: "The Congress shall have the power . . . to make all laws which [are] necessary and proper for carrying into execution the foregoing powe[r] . . . ."

◼ The grant of power to Congress to legislate on the subject of bankruptcies includes the power to impair the obligations of contracts notwithstanding the individual states are forbidden to do so. *Hanover*

*National Bank v. Moyses,* 186 U.S. 181 at 188, 22 S.Ct. 857 at 860, 46 L.Ed. 1113 (1902). Article I, section 10 of the Constitution of the United States which prohibits any state from passing a law which impairs the obligations of contracts, is in its terms, a limitation on the powers of the states only. *Louisville Joint Stock Land Bank v. Radford,* 74 F.2d 576 at 580 (6th Cir. 1935).

The Constitutional provision conferring upon Congress the power to legislate on the subject of bankruptcies is read into contracts as constituting a part thereof. *Wright v. Union Central Life Ins. Co.,* 304 U.S. 502 at 516, 58 S.Ct. 1025 at 1033, 82 L.Ed. 1490 (1938). A mortgagee's rights are at all times subject to bankruptcy legislation by Congress affecting the creditor's remedy against the debtor's assets or the measure of the creditor's participation therein provided only that the bankruptcy provisions are consonant with fair, reasonable, and equitable distribution of the assets. Re *Chicago, R.I. & P. R. Co.,* 90 F.2d 312 at 316 (7th Cir. 1937).

The power of Congress to establish bankruptcy laws is subject to the due process clause of the fifth amendment to the United States Constitution. It has been held that a violation of the fifth amendment due process clause occurs when the retrospective application of a bankruptcy statute destroys vested property rights. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (hereinafter cited as *Radford* ).

The questions as to whether a statute operates retrospectively, or prospectively only, is one of legislative intent. *Hassett v. Welch,* 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). Section 403(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, known as the "Savings Provisions," provides that:

(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter or proceeding shall continue to be governed by the law applicable to such case, matter, or proceedings as if the Act had not been enacted.

Accordingly, only cases commenced prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, are to be determined under the former Bankruptcy Act (bankruptcy statute enacted on July 1, 1898, and amended from time to time until the passage of the 1978 legislation.) For all other purposes, the Bankruptcy Act is repealed. Section 401(a) Title IV, Pub.L. 95–598.

Thus in cases filed after October 1, 1979, if Congress did not intend the substantive provisions of the Bankruptcy Reform Act to apply to obligations created by the debtor prior to October 1, 1979, there would be no bankruptcy laws in effect to deal with those debts. Therefore, it appears that Congress intended that the Bankruptcy Reform Act be applied retrospectively.

In the *Radford* case, Radford, hereinafter referred to as debtor, took advantage of the provisions of the Frazier–Lemke Act, which amended section 75 of the Bankruptcy Act, and sought to stay all proceedings against his farm by the mortgagee bank for five years, during which five years the debtor was to retain possession provided he pay a reasonable rental. At the end of the five years, or prior thereto, the debtor could purchase the property by paying into the court the appraised price of the property. The mortgagee bank, in the *Radford* case refused to consent to the sale of the property to the debtor under the provisions of the Frazier–Lemke Act.

The Supreme Court held that the effect of the Frazier–Lemke Act, which only applied to debts existing at the time the Act became effective, was the taking of substantive rights in specific property acquired by the bank prior to the Act. *Radford* supra at 590. The Court looked to the law of the State, Kentucky, and found the following to be the rights of the mortgagee prior to the passage of the Act:

(1) right to retain lien until indebtedness thereby secured is paid;

(2) right to realize upon security by judicial public sale;

(3) right to determine when such sale shall be held, subject only to discretion of court;

(4) right to protect its interest in the property by bidding at such sale and thus to assure having mortgaged property devoted primarily to satisfaction of debt, either through receipt of proceeds of fair competitive sale or by taking property itself; and

(5) right to control meanwhile the property during period of default, subject only to discretion of court, and to have the rents and profits collected by receiver for satisfaction of the debt.

The Court in *Radford* held section 75 of the Bankruptcy Act invalid because it deprived the mortgagor of these five enumerated rights.

The underlying principle of contracts relating to pledges of property as security for debts was described in *In re Carter*, 56 F.Supp. 385 at 393 (W.D.Va.1944) as the right of the creditor to acquire property pledged as security in lieu of his debt in case the debt is not paid. *The creditor lends money because of his belief that the property is worth at least the amount of the loan and because of his willingness to take the property in lieu of the debt in case the debt is not paid. This is the foundation, the essential element of every such contract.* (emphasis added) *In re Carter*, supra at 388.

In the *Radford* case, the mortgagee bank did lend money to the debtor and did take the farm land as security for the loan because of the bank's belief that the property was worth at least the amount of the loan and because of its willingness to take the farm land in lieu of the debt in case the debt was not paid. This is not the case where a creditor takes a nonpurchase-money security interest in the debtor's household and personal goods. Congress realized this difference and in explaining the purpose of section 522(f) of the Bankruptcy Code stated that:

. . . Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings and obtain a waiver by the debtor of his exemptions . . . If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditors in the debtor's hands as they provide a credible basis for the threat, because the replacement costs of the goods are generally high. The creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make. *H. Rep. No. 595*, 95th Cong., 1st Sess. 127 (1977), U.S.Code Cong. & Admin.News 1978, p. 6088.

It has been the experience of this court that creditors holding nonpurchase-money security interests on all of the debtor's household goods and a second mortgage on the debtor's residence release such liens on household goods when they become aware that the debtor is about to file a petition under Chapter 13 of the Bankruptcy Code. Under 11 U.S.C. § 1322(b)(2), a Chapter 13 Plan may "modify the rights of holders of secured claims *other than* a claim secured *only* by a security interest in real property that is the debtor's principal residence, . . ." (emphasis added.) Thus, the creditors release their liens on debtor's household goods in an attempt to take away the debtor's ability to modify their rights under the provisions of a Chapter 13 Plan. This course of action by creditors lends support to the insight of Congress that holders of nonpurchase-money security interests on household goods rarely repossess.

A creditor who makes a loan and takes a nonpurchase-money security interest in highly depreciable household goods as se-

curity for the loan, does not actually take the household goods as security for the loan because there is no belief by the creditor that the household goods are worth the amount of the loan. The creditors in these type of cases have never attempted to offer the slightest evidence that the household goods at the time the loan was made, or at the time of the bankruptcy, had any relationship in value to the amount of the loan made or due. The relationship between the value of the security and the amount of the loan that is present in a mortgage of real estate is not present in a nonpurchase–money lien on household goods.

This distinction is well illustrated by the facts in this case. The original loan, granted on August 3, 1978, was in the amount of $2,880.00. The household goods taken as collateral for said loan were valued by debtors at only $800.00 on April 1, 1980, the date of the filing of the debtors' petition in bankruptcy.

Due to the discrepancy between the value of the security and the amount of the loan, a creditor holding a nonpurchase–money security interest in household goods is rarely willing to take the household goods in lieu of the debt in case of default. In one situation where the creditor did repossess the household goods upon debtor's default, the court was informed that such creditor took the goods to the junk yard. Such action by the creditor demonstrates that the creditor does not look to the household goods in lieu of payment when there is a default.

In *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1 at 15, 96 S.Ct. 2882 at 2892, 49 L.Ed.2d 752 (1976), the Supreme Court held that:

> It is by now well established that legislative Acts adjusting burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. See: *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1936) and *Williamson v. Lee Optical*

*Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

The Court further found that: "Our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." 428 U.S. at 16, 96 S.Ct. at 2893. See *Fleming v. Rhodes,* 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947); *Carpenter v. Wabash R. Co.,* 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940); *Norman v. Baltimore & Ohio R. Co.,* 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); *Home Bldg. & Loan Assn. v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); and *Louisville & Nashville R. Co. v. Mottley,* 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911).

Section 522(f) of the Bankruptcy Code is addressed to the legitimate end of protecting the debtor's exemptions, his discharge, and thus his fresh start and the means taken, permitting the debtor to avoid certain liens on certain exempt property, are reasonable and appropriate to that end. For the provisions of the Bankruptcy Act to violate the fifth amendment they must be so grossly arbitrary and unreasonable as to be incompatible with fundamental law. *Campbell v. Alleghany Corp.,* 75 F.2d 947 at 953 (4th Cir. 1935). See also: *Hanover,* supra at 192, 22 S.Ct. at 862.

In a recent case involving the application of 11 U.S.C. § 522(f) to avoid a nonpurchase–money security interest in exempt household furnishings, the court stated that: "The avoidance of nonpurchase money liens on household furnishings is not only reasonable but essential in meeting the plainly enunciated Congressional intent to give debtors resorting to bankruptcy a 'fresh start'". *In re Head,* 4 B.R. 521 at 524, 6 B.C.D. 489 at 491 (Bkrtcy.E.D.Tenn. 1980).

The provisions of § 522 were held to further legitimate goals of bankruptcy in *In re Beck,* 6 B.C.D. 491, 4 B.R. 661 (Bkrtcy.C.D.Ill.1980), where the court explained:

> Exemptions to a debtor have ever been a fundamental element of bankruptcy. 3 Collier on Bankruptcy, 522.01 (15th Ed.

**214**

1979). In passing 522(d)(3) and 522(f)(2) of the Code, Congress endeavored to ensure to debtors that their exemptions would not be nullified by creditors with blanket security interests in all of the debtor's property. Both provisions of 522 further the legitimate goals of bankruptcy–to rehabilitate debtors by relieving them of their oppressive debts and allowing them to retain enough property to make a meaningful fresh start, 4 B.R. at 663–664, 6 B.C.D. at 492.

Section 522(f) of the Bankruptcy Code does not make it possible for the debtor to avoid all nonpurchase–money security interests in exempt property. The debtor may only avoid a nonpurchase–money security interest in five categories of property: (1) household goods and furnishings, (2) tools of trade, (3) prescribed health aids, (4) wearing apparel, and (5) musical instruments to the extent that the property could have been exempted in the absence of such lien. These five categories of property encompass property that is required for the maintenance, health, and welfare for the debtor and his family. The purpose of an exemption is not for the personal privilege of the debtor but for the benefit of his family who may be destitute and the public who might otherwise be burdened with the support of an insolvent debtor's family. *In re Perry*, 225 F.Supp. 481 at 481–82 (N.D. Ohio 1963).

Congress, when drafting the new Bankruptcy Code, looked to the practice of creditors with nonpurchase–money security interests under the Bankruptcy Act and concluded that these creditors had an unfair advantage over the debtor. Congress intended that the debtor use the avoiding power under section 522(f) of the Bankruptcy Code, to eliminate this unfair advantage. *H. Rep. No. 595*, 95th Cong., 1st Sess. 127 (1977).

This court agrees with the court in *Beck* that in enacting 11 U.S.C. § 522(f) Congress was acting reasonably in its desire to rehabilitate the debtor and did not enact legislation effecting rights of secured creditors to the extent that they were denied due process of law, 4 B.R. 661, 6 B.C.D. at 493.

This Court is aware that a trial court should be slow to deny constitutionality to an Act of Congress unless its conflict with the constitutional provision is clear. Such duty belongs peculiarly to the appellate courts. *Thompson v. United States*, 148 F.Supp. 910 at 914 (E.D.Pa.1957). Further, the burden of establishing the unconstitutionality of a statute rests on him who assails it and doubt as to the constitutionality of an act should always be resolved in its favor. *Metropolitan Co. v. Brownell*, 294 U.S. 580 at 584, 55 S.Ct. 538 at 540, 79 L.Ed. 1070 (1935).

Therefore, it is the conclusion of the court that 11 U.S.C. § 522(f) can be applied retrospectively by the debtors to avoid a nonpurchase–money security interest in household goods, claimed exempt by Debtors, which was obtained by Creditor prior to the enactment date of the Bankruptcy Code.