In re David Henry BAILEY, Brenda Lou Bailey, Debtors.

David Henry BAILEY, Brenda Lou Bailey, Plaintiffs,

v.

CIT, Defendant.

In re Ricky Eugene BRADY, Sheba Jean Brady, Debtors.

Ricky Eugene BRADY, Sheba Jean Brady, Plaintiffs,

v.

CIT, Defendant.

In re Sherry Ann BOHANNON, Debtor.

Sherry Ann BOHANNON, Plaintiff,

v.

THIRD NATIONAL BANK, Defendant.

Bankruptcy Nos. 3–80–00557, 3–80–00676 and 3–80–00358.
Adv. Nos. 3–80–0264, 3–80–0330 and 3–80–0211.

United States Bankruptcy Court, E. D. Tennessee.

March 30, 1981.

Peter C. Kral, Knoxville, Tenn., for plaintiffs David Henry Bailey and Brenda Lou Bailey.

James R. Moore, Knoxville, Tenn., for plaintiffs Ricky Eugene Brady and Sheba Jean Brady.

David W. McNabb, Knoxville, Tenn., for plaintiff Sherry Ann Bohannon.

Wade M. Boswell, Knoxville, Tenn., for defendant CIT.

James L. Roberts, Nashville, Tenn., for defendant Third National Bank.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue in these adversary proceedings is whether the avoidance of liens under 11 U.S.C. § 522(f)(2)[1] involving security interests created prior to the enactment of the Bankruptcy Reform Act constitutes a taking of property in violation of the 5th Amendment of the United States Constitution.[2]

### I

In these cases, the plaintiffs borrowed money from the defendants, granting in exchange a security interest in either household goods or furniture. Plaintiffs David Henry Bailey and Brenda Lou Bailey borrowed $2,700 from the defendant CIT on October 25, 1978. Plaintiffs Ricky Eugene Brady and Sheba Jean Brady borrowed $2,700 from the defendant CIT on October 31, 1978. Plaintiff Sherry Ann Bohannon borrowed $3,800 from the defendant Third National Bank on October 31, 1978.

On March 27, 1980, Sherry Ann Bohannon filed a petition in bankruptcy listing the Third National Bank as a secured creditor. The household goods held as security by the Bank were claimed as exempt under 11 U.S.C. § 522(d)(3).[3] On May 2, 1980, the Baileys filed a petition in bankruptcy listing CIT as a secured creditor. The household goods held as security by CIT were claimed as exempt under § 522(d)(3). On May 23, 1980, the Bradys filed a petition in bankruptcy listing CIT as a secured creditor. The household furnishings held as security by CIT were claimed as exempt under § 522(d)(3).

Subsequent to the filing of the bankruptcy petitions all of the plaintiffs filed complaints to avoid defendants' liens under § 522(f). The defendants respond that, since the security interests were created before the enactment of the Bankruptcy Reform Act,[4] retrospective application of § 522(f) to avoid the liens would violate the 5th Amendment to the United States Constitution.[5] Specifically, it is asserted that

---

1. "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (h) of this section, if such lien is—

. . . . .

(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids for the debtor or a dependent of the debtor." 11 U.S.C. § 522(f)(2).

2. "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S.Const. Amend. V.

3. "(d) The following property may be exempted under subsection (b)(1) of this section:
(3) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments that are held primarily for the personal, family, or household use of the debtor or

a dependent of the debtor." 11 U.S.C. § 522(d)(3).

4. The Bankruptcy Reform Act of 1978, P.L. 95–598, was enacted on November 6, 1978, and became effective on October 1, 1979. *See generally* Klee, Legislative History of the New Bankruptcy Code, 54 Am.Bankr.L.J. 275.

5. Since the constitutionality of an act of Congress was challenged, that fact was certified to the U.S. Attorney General pursuant to 28 U.S.C. § 2403(a):
"(a) In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality."
The Attorney General has not responded.

such avoidance represents a taking of property without compensation.[6]

## II

The Congress of the United States has the exclusive power to establish laws on the subject of bankruptcies. U.S.Const. Art. I, § 8, cl. 4.[7] In the establishment of bankruptcy laws the Congress has the power to impair the obligation of contracts, a power expressly withheld from the States by the U.S. Constitution. U.S.Const. Art. I, § 10, cl. 1.[8] Indeed, as the U.S. Supreme Court stated in 1935:

"Speaking generally, it may be said that Congress, while without power to impair the obligation of contracts by laws acting directly and independently to that end, undeniably, has authority to pass legislation pertinent to any of the powers conferred by the Constitution however it may operate collaterally or incidentally to impair or destroy the obligation of private contracts." *Continental Illinois Nat. Bank & Trust Co. v. Chicago*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935).

The congressional power to enact laws concerning bankruptcy is read into contracts so that parties to a contract are chargeable with knowledge of existing and future bankruptcy laws. *In re Prima Co.*, 88 F.2d 785 (7th Cir. 1937). However, the retrospective operation of a bankruptcy statute is subject to the 5th Amendment's provision that property shall not be taken without due process of law.[9]

The controlling case concerning the conflict between the 5th Amendment and retrospective bankruptcy legislation enacted by Congress is *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1934). In 1922 and 1924 Radford mortgaged his farm. The first default occurred in 1931. In 1934 the Frazier-Lemke Act was passed. Although Radford had previously sought relief under the Bankruptcy Act in 1934, he filed an amended petition asking that he be adjudged bankrupt and requesting relief under the Frazier-Lemke Act. Frazier-Lemke permitted Radford to purchase the farmland at its appraised value. Further, if the mortgagee would not consent to the purchase, Frazier-Lemke required the bankruptcy court to stay all proceedings for 5 years during which time the mortgagor, Radford, would retain possession. At the end of the 5-year period the mortgagor could purchase the property for the appraised price.[10]

Mr. Justice Brandeis, after discussing the rights that the mortgagee otherwise would have had, concluded that the only right the mortgagee retained under Frazier-Lemke was the right to retain the lien until the mortgagor released it by paying the appraised value. The rights which the court found to have been lost were—

"(1) The right to retain the lien until the indebtedness thereby secured is paid.

(2) The right to realize upon the security by a judicial public sale.

**6.** Defendant Third National Bank filed with its answer a counterclaim which requested termination of the automatic stay of 11 U.S.C. § 362(a) with respect to the collateral, and also moved for summary judgment. In response, the plaintiff, Sherry Ann Bohannon, filed a motion to dismiss the defendant's counterclaim and requested summary judgment in her favor. The court declined to rule on these respective motions, the sole issue being the application of § 522(f) as applied to a lien created prior to enactment of the code.

**7.** Powers of Congress—
To establish ... uniform laws on the subject of bankruptcies throughout the United States.

**8.** No state shall ... pass any ... law impairing the obligation of contracts. U.S.Const. Art. I, § 10, cl. 1.

**9.** The question of whether a particular statute is to be applied prospectively or whether it is to be given retrospective application, is determined by the intent of the legislators. *United States v. Magnolia Petroleum Co.*, 276 U.S. 160, 48 S.Ct. 236, 72 L.Ed. 509 (1928); *Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964). The Bankruptcy Reform Act applies to all cases commenced after October 1, 1979. The former Bankruptcy Act applies to cases commenced before October 1, 1979. § 403(a) Title IV, P.L. 95–598. There is no provision making § 522(f) applicable to preenactment liens.

**10.** Radford's farm had been appraised at $4,445. The land was mortgaged in the amount of $9,205.09.

(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt." *Id.* at 594, 595, 55 S.Ct. at 865.

The court concluded that "substantial" rights were taken from the Bank without any compensation being given, a violation of the 5th Amendment. The reasonableness of the Frazier-Lemke Act was not considered to be determinative.

Cases decided subsequent to *Radford* have not overruled that decision but basically have followed its reasoning. *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), involved an amendment to the Frazier-Lemke Act which was challenged because the mortgagee was denied control of the property during the period of default. This was found not to be a "substantial impairment of security" as in *Radford*, but a permissible modification of a remedy. The distinction between the substantial impairment or destruction of a contract and a restriction on available remedies was restated in 1937:

"while, therefore the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions

are consonant with a fair, reasonable, and equitable distribution of those assets." *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 452, 57 S.Ct. 298, 301, 81 L.Ed. 340, 346.

§ 522(f) of the Bankruptcy Reform Act not only alters the creditor's remedy, it completely avoids the contract, i. e., the security interest. While it is true the monetary value of the household goods involved in many cases may be considered minimal,[11] a substantial impairment occurs when the lien on such goods is totally avoided since all remedies of the creditor are eliminated. This court concludes that 11 U.S.C. § 522(f)(2) cannot be applied to security interests created prior to enactment of the Bankruptcy Reform Act.[12] See *Rodrock, et al.*, 642 F.2d 1193 (10th Cir. 1981).

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

---

11. *See* H.R.Rep. No. 95–595, 95th Cong. 2d Sess. 127, *reprinted in* (1978) U.S. Code Cong. & Ad. News, 5787, 6088.

12. This court has previously held that § 522(f)(2) can be applied to security interests

created *subsequent* to the enactment of the Bankruptcy Reform Act but *prior* to its effective date. *In re Head*, 6 B.C.D. 489, 4 B.R. 521 (Bkrtcy. E.D. Tenn. 1980).